**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000627
15-AUG-2019
10:46 AM**

NOS. CAAP-17-0000627 AND CAAP-17-0000628

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-17-0000627**

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
TIMOTHY SCHOENHORN, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
(WAILUKU DIVISION)
(CASE NOS. 2DCC-17-0000299 and 2DCC-17-0000390)

AND

**CAAP-17-0000628**

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
TIMOTHY SCHOENHORN, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
(WAILUKU DIVISION)
(CASE NOS. 2DCC-17-0000299 and 2DCC-17-0000390)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Timothy Schoenhorn (Schoenhorn),
appeals, *pro se*, from two judgments (collectively, Judgments):
(1) the August 2, 2017 "Judgment" entered in criminal case 2DCC-
17-0000299, and (2) the August 2, 2017 "Judgment" entered in

criminal case 2DCC-17-0000390, in the District Court of the Second Circuit, Wailuku Division (district court).[1]

This appeal arises from two charges of illegal camping under Hawaii Administrative Rules (HAR) § 13-221-15 (effective 1988)[2] brought against Schoenhorn by Plaintiff-Appellee State of Hawai'i (State) in 2017. Both cases were consolidated into a single trial held on August 2, 2017. At the close of trial, the district court found Schoenhorn guilty of both charges and sentenced him to pay a $50.00 fine for each violation. Schoenhorn timely appealed both cases.

Schoenhorn raises three points of error: (1) the evidence was insufficient to show that Schoenhorn was "camping" as defined by HAR § 13-221-2 (effective 1988, amended 2002);[3] (2) the prohibition on camping in HAR § 13-221-15, when read in conjunction with the definition of camping in HAR § 13-221-2, is unconstitutionally overbroad and vague; and (3) the Department of Land and Natural Resources (DLNR) officer (the Officer) that issued the citation violated Schoenhorn's right to privacy.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant case law, we resolve Schoenhorn's appeal as follows:

---

[1] The Honorable Kelsey T. Kawano presided in both cases.

[2] HAR § 13-221-15 provides:

> Camping. No person shall camp or use recreational trailers or other camper units on the premises, except with the prior written authorization of the board or its authorized representative.

[3] HAR § 13-221-2 provides in relevant part:

> "Camping" means the possession of a backpack, tents, blankets, tarpaulins, or other obvious camping paraphernalia any time after one hour after sundown until sunrise on unencumbered state lands.

2

(1) Schoenhorn's first point of error contends that the evidence was insufficient to show that Schoenhorn was "camping" as defined by HAR § 13-221-2. Specifically, Schoenhorn contends that at trial the Officer could not identify any specific item contained in the definition of camping in HAR § 13-221-2 was in Schoenhorn's possession at the time of the incident.

We review the sufficiency of evidence on appeal as follows:

> Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010) (block quote format altered) (internal citations, brackets, and quotation marks omitted).

At trial, the Officer testified regarding both incidents:

> [Officer]: Ah, I observed that he was, ah, sleeping with his (inaudible), ah, (inaudible) a futon mattress. He had pillows. He had blankets. Um, and, ah, these are all — these are all (inaudible) to the rules. As we call camping paraphernalia.

The State also entered State's Exhibit 3 which, according to the Officer who took the picture, accurately represented the Officer's observations on April 20, 2017, and showed "the defendant sleeping in the back of the van. The back hatch is open. His pillow, his blanket and his dog." The State further entered State's Exhibit 4 which, according to the Officer who took the picture, accurately represented the Officer's observations on May 11, 2017, and showed "the defendant in the back of the van. Um, it shows the mattress. It shows a sheet, blanket and pillow." On cross-examination, the Officer confirmed

3

that he observed Schoenhorn "wrapped up in what appeared to be a blanket. And the actual construction of it, I'm not sure. But you were wrapped up in that. And there very -- there are a lot of different types of blankets (inaudible) materials. So you were wrapped up in that like a blanket." Schoenhorn did not present any evidence at trial on the issue, and he confined his relevant cross-examination exchange to questions regarding the Officer's definition of a "blanket."

The evidence presented, consisting of the citing Officer's testimony and photographs of the scene, was of sufficient quality to enable a person of reasonable caution to support a conclusion that Schoenhorn was in possession of, in fact "wrapped up in," a blanket when he was cited by the Officer. Accordingly, there was substantial evidence to support the district court's conclusion that Schoenhorn was "camping" in violation of HAR § 13-221-15. Thus, we reject Schoenhorn's first point of error on appeal as the evidence was sufficient to support his conviction.

(2) Schoenhorn's second point of error contends that the prohibition on camping in HAR § 13-221-15, when read in conjunction with the definition of camping in HAR § 13-221-2, is unconstitutionally overbroad and vague. The district court rejected Schoenhorn's challenge based on the presumption that the statutes and administrative rules were constitutional.[4]

---

[4] The trial transcript from August 2, 2017, reads:

The Court: All right. Thank you.

Mr. Schoenhorn, please rise. I'm ready to make my ruling.

First of all, let me say I appreciate your preparation. And I also appreciate your legal argument.

I'm going to presume that the statute and Hawaii Administrative Rules, our Constitution [sic], and it's going to be your burden should you proceed to challenge this further, to take it on up. And you will bear the burden to convince our appeals court that these are unconstitutional provisions of law that are being applied as -- as against you.

4

We review questions of constitutional law *de novo* under the "right/wrong" standard and, thus, exercise our "own independent judgment based on the facts of the case." State v. Jenkins, 93 Hawaiʻi 87, 100, 997 P.2d 13, 26 (2000) (internal quotation marks and citation omitted). When reviewing statutes,

> [e]very duly-enacted statute is presumptively constitutional, and the party challenging the statute must carry a heavy burden to overcome this presumption. State v. Gaylord, 78 Hawaiʻi 127, 137, 890 P.2d 1167, 1177 (1995). Whenever possible, a penal statute will be read narrowly and in such a manner as to preserve the statute's constitutionality. Id. at 137-38, 890 P.2d at 1177-78.

State v. Alangcas, 131 Hawaiʻi 312, 316, 318 P.3d 602, 606 (App. 2013). We similarly review the constitutionality of an administrative rule under the same standard "since such rules have the force and effect of law." State v. Kirn, 70 Haw. 206, 208, 767 P.2d 1238, 1240 (1989) (citations omitted).

The State contends on appeal that Schoenhorn lacks standing to allege that the enactments at issue in this case are constitutionally overbroad and vague. Regarding the overbreadth challenge, "[g]enerally, 'one who alleges that a statute is unconstitutionally overbroad . . . must be directly affected by the claimed overbroad aspects.'" State v. Alangcas, 134 Hawaiʻi 515, 527, 345 P.3d 181, 193 (2015) (quoting Gaylord, 78 Hawaiʻi 127, 142, 890 P.2d 1167, 1182 (1995)). However, "[a] court may also entertain a facial overbreadth challenge when the 'enactment reaches a substantial amount of constitutionally protected conduct.'" Id. at 194, 345 P.3d at 528 (quoting State v. Beltran, 116 Hawaiʻi 146, 152, 172 P.3d 458, 464 (2007)). Similarly, regarding the vagueness challenge,

> In order for a defendant to succeed on an as-applied challenge, the defendant must demonstrate that the disputed statute is vague with respect to his or her conduct. [] However, when a statute burdens a significant constitutional right, such as the freedom of expression, a defendant whose rights are not violated may raise the constitutional rights of others.

Id. at 197, 345 P.3d at 531 (citing Beltran, 116 Hawaiʻi at 151 n.4, 172 P.3d at 463 n.4.

In this case, in light of our conclusion that there was sufficient evidence adduced at trial that Schoenhorn possessed a blanket in direct violation of HAR § 13-221-15, there is no evidence that the claimed overbroad and vague aspects of the definition of "camping" in HAR § 13-221-2 directly affected Schoenhorn. Thus, Schoenhorn's challenge is to these rules on their face.

The Hawai'i Supreme Court held in Beltran that, in addition to facial challenges based on the right to the freedom of expression, a court may entertain a facial overbreadth challenge if the statute at issue implicates a substantial amount of constitutionally protected conduct. 116 Hawai'i at 151, 172 P.3d 463; see also Alangcas, 134 Hawai'i at 528, 345 P.3d at 194. In this case, Schoenhorn contends that the enactments would inhibit the right to freedom of movement and freedom of association and could "implicate innocent star gazers or beachgoers taking an evening stroll for simply possessing a backpack." Accordingly, we address Schoenhorn's facial challenge that HAR § 13-221-15, read in conjunction with the definition of "camping" in HAR § 13-221-2, is overbroad.

Following the Supreme Court of Hawai'i in Beltran:

> in a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. In determining whether a substantial amount of protected activity was affected, a court should evaluate the ambiguous as well as the unambiguous scope of the enactment. To this extent, the vagueness of a law affects overbreadth analysis.

116 Hawai'i at 152, 172 P.3d at 464 (internal brackets, quotation marks, and citations omitted). Thus, we first review the scope of the enactments in this case to ascertain whether they impinge upon a substantial amount of constitutionally protected conduct.

"The fundamental starting point of statutory interpretation is the language of the statute itself." Alangcas, 134 Hawai'i at 525, 345 P.3d at 191 (citing Hawaii Gov't Emps.

6

Ass'n v. Lingle, 124 Hawai'i 197, 202, 239 P.3d 1, 6 (2010)).
"Thus, where the statutory language is unambiguous, our duty is
to give effect to its plain and obvious meaning." Id.

In the present case, HAR § 13-221-15 unambiguously
prohibits the act of camping without prior written authorization
from DLNR or its authorized representative. The definition of
"camping" in HAR § 13-221-2 is not internally inconsistent and
describes the prohibited act as the possession of an item from an
enumerated list of items constituting "obvious camping
paraphernalia" from "one hour after sundown until sunrise"
(nighttime) on unencumbered state lands. On a plain reading, the
enactments are not ambiguous and describe the proscribed conduct
in ordinary and understandable terms. We construe them to merely
require prior written authorization for, but not to ban, all
nighttime activities by persons in possession of a prohibited
item on unencumbered state lands. However, such construction,
even when read narrowly, would seemingly require that even "star
gazers or beachgoers taking an evening stroll [while] possessing
a backpack" obtain prior written authorization and so affects the
freedom of movement and freedom of association.[5]

---

[5]    [Freedom of movement and freedom of association] are
just as important and vital to our way of life as the rights
or freedoms more specifically enumerated in Sections 3 to 19
in our Bill of Rights, Article I, Constitution of the State of
Hawai[']i. Thus, we have no doubt that our State Constitution
does guarantee to the people of Hawai[']i the freedom of
movement and freedom of association.
    Also, we believe the importance of these fundamental
rights is coming more and more to the foreground in our
modern mobile and fluid society. Thus, it would be utmost
folly to underestimate the influence of these two freedoms
in our free society. Freedom would be incomplete if it does
not include the right of men to move from place to place, to
walk in the fields in the country or on the streets of a
city, to stand under open sky in a public park and enjoy the
fresh air, to lie down on a public beach and enjoy a
sunbath, to visit a friend in his home and enjoy an evening
together, and the right to associate with others in the
enjoyment of an avocation or a vocation.

State v. Shigematsu, 52 Haw. 604, 610, 483 P.2d 997, 1000-01 (1971)
(footnotes omitted).

We next evaluate whether the enactments validly regulate the ensnared constitutionally protected conduct. See Alangcas, 134 Hawai'i at 530, 346 P.3d at 196 (holding that Hawaii Revised Statutes (HRS) § 707-756 was not overbroad because the freedom to travel was only limited by the exclusion of "that agreed upon location and only at that agreed time."). To accomplish this, we first review whether the enactments are a valid exercise of the State's police power and second whether there exist any constitutional limitations on the exercise of the police power. See State v. Sturch, 82 Hawai'i 269, 273, 921 P.2d 1170, 1174 (1996).

We have previously held, and Schoenhorn does not challenge on appeal, that the constitutional rights of freedom of movement and freedom of association exist "subject to the State's police power to regulate an individual's conduct for the protection of society." Sturch, 82 Hawai'i at 273, 921 P.2d at 1174 (citing State v. French, 77 Hawai'i 222, 231, 883 P.2d 644, 653 (App. 1994)). "The police power of the State is broad and extends to the 'preservation of public health, safety, morals or the general welfare of the public.'" Id. (brackets omitted) (quoting State v. Lee, 55 Haw. 505, 513, 523 P.2d 315, 319 (1974)). "As long as a statute is related to these objectives, it falls within the scope of the State's police power." Id.

In the present case, HAR §§ 13-221-15 & 13-221-2 were enacted by the Board of Land and Natural Resources (BLNR) pursuant to authority granted by the Hawai'i State Legislature via HRS § 171-6 (2011). The legislature originally enacted the authorizing statute in 1962 as an "urgency measure deemed necessary in the public interest" because "a serious question exist[ed] as to whether or not Hawai[']i ha[d] any land laws relating to the management and disposition of the public lands." 1962 Haw. Sess. Laws Act 32, § 1 at 95. The Legislature stated, it was of "immediate importance to the economy and to the people of Hawai[']i that we adopt a set of laws for the management and

8

disposition of our public lands in accordance with present day needs." Id.

In this way, the legislature empowered BLNR to enact administrative rules to "manage" the public lands to protect the public health and general welfare of the public as a valid use of the State's police power. The authorizing statute placed no limit on the types of activities or extent of the access that could be so managed except for an allowance for the "exercise of native Hawaiian gathering rights and traditional cultural practices[.]" HRS § 171-6(15). Further, HAR § 13-221-1 (1988) states that the purpose of the enactments at issue in this case is merely to "control public activities on unencumbered public lands." The enactments do not exceed the purpose of the authorizing statute by purporting to ban the public's access to unencumbered state lands, rather, the enactments merely provide that prior written authorization is necessary to camp on unencumbered state lands. Thus, we conclude that DLNR's enactments in this case are a valid exercise of the State's police power as delegated by the legislature.

We next evaluate whether there exist any constitutional limitations on the State's exercise of its police power through the enactments at issue in this case. In Beltran, the Hawai'i Supreme Court found a city ordinance was unconstitutionally overbroad to the extent that it required a permit for activities defined as camping "regardless of the intent of the participants or the nature of any other activities in which they may also be engaging." 116 Hawai'i at 152, 172 P.3d at 464 (emphasis in original). According to Beltran, the city ordinance regulated activity "regardless" of its nature, and by definition included the regulation of other activities not specifically regulated by the camping ordinance. Id. That is not the case here. The enactments in this case only require prior written authorization for nighttime activities by persons in possession of a prohibited item on unencumbered state lands. The same activities carried

out at other times of day or carried out at nighttime by persons not possessing a prohibited item are not regulated by the enactments. The limitations on the activities which require prior written authorization distinguish the present case from the sweeping language contained in the ordinance at issue in Beltran.

Further, and likewise distinguishable from the present case, the United States Court of Appeals for the Ninth Circuit evaluated whether a DLNR permitting enactment which regulated the commercial conduct of weddings on public beaches was a valid, not overbroad, regulation of the freedom of expression. Kaahumanu v. Hawaii, 682 F.3d 789 (9th Cir. 2012). In Kaahumanu, the Ninth Circuit evaluated whether the permit requirements: (1) were content neutral; (2) were narrowly tailored to serve a significant government interest; (3) left open ample alternative channels for exercising the constitutional right; and (4) did not delegate overly broad licensing authority to a government official. Id. at 802-03.

In this case, the enactments: (1) regulate an action (possession of an enumerated item during the nighttime) without regard to its purpose; (2) are narrowly tailored to manage only some types of access to unencumbered state lands; and (3) leave open ample opportunities for citizens to exercise the freedom of movement and freedom of association during both the day and the nighttime without possession of the prohibited items. Regarding the fourth element, unlike in Kaahumanu, Schoenhorn's defense before the district court did not challenge the enactments' requirement of prior written authorization, thus there was no opportunity for the state to present evidence, no argument, and no record on the issue produced by the district court. Schoenhorn failed to litigate this element before the district court, and failed to preserve the issue for appeal.

Thus, we conclude that, while the enactments in this case do regulate certain instances of movement and association, such regulation is in accordance with the State's police power.

10

HAR §§ 13-221-15 and 13-221-2 are not unconstitutionally overbroad because they do not reach a substantial amount of constitutionally protected conduct.

Finally, because we hold that the enactments are unambiguous and do not burden the freedom of movement or freedom of association, and because Schoenhorn does not allege that the enactments burden any other constitutional rights, Schoenhorn's facial vagueness challenge likewise fails. See Alangcas, 134 Hawai'i at 532, 345 P.3d at 198 (refusing to entertain a facial vagueness challenge where the statute at issue was determined to not burden the freedom of expression or the freedom of movement and the defendant did not allege that the vagueness infringed any other constitutional rights).

(3) Schoenhorn's final point of error contends that the Officer that issued the citation violated Schoenhorn's right to privacy when the Officer searched Schoenhorn's vehicle without probable cause. Specifically, Schoenhorn contends that the Officer could not see that Schoenhorn possessed any obvious camping paraphernalia from the road and lacked a formal complaint from the public to approach and search Schoenhorn's vehicle.

The Hawai'i Supreme Court has repeatedly held that an area in which an individual has a reasonable expectation of privacy is protected by the Fourth Amendment of the United States Constitution and article I, section 7 of the Hawai'i State Constitution and the police cannot search that area absent a warrant. State v. Wong, 68 Haw. 221, 223, 708 P.2d 825, 828 (1985). "This expectation of privacy, however, is diminished with regard to automobiles. Furthermore, no expectation of privacy exists when the individual exposes his actions in open view to the general public." Id. at 223-24, 708 P.2d at 828 (citations omitted). In Wong, the Supreme Court held that the police did not violate Wong's reasonable expectation of privacy when they observed via binoculars, at night, the contents of Wong's vehicle which was parked with a door open in a parking lot

11

open to the general public.  <u>Id.</u> at 224, 708 P.2d at 828.  In the present case, the Officer testified that he observed Schoenhorn's van parked on publicly accessible, unencumbered state lands.  The Officer stated that the van was parked with its back doors open near a posting of activities prohibited to the public (including camping).  The Officer testified that he could clearly see through the open back doors of the vehicle that Schoenhorn was in possession of a blanket and sleeping in the back of the open vehicle.  Accordingly, we conclude that Schoenhorn had no constitutionally protected expectation of privacy in the present case and thus the Officer's view of the blanket did not constitute a search that violated Schoenhorn's right to privacy.

For the foregoing reasons, the August 2, 2017 "Judgment" entered in criminal case 2DCC-17-0000299, and the August 2, 2017 "Judgment" entered in criminal case 2DCC-17-0000390, in the District Court of the Second Circuit, Wailuku Division, are affirmed.

DATED:  Honolulu, Hawai'i, August 15, 2019.

On the briefs:

Timothy Schoenhorn,
Pro Se, Defendant-Appellant.

Peter A. Hanano,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge